**Robert MARIETTA, Plaintiff,**

v.

**CITIES SERVICE OIL COMPANY, a Delaware Corporation authorized to do business in the State of New Jersey and Oil, Chemical and Atomic Workers Union, Local 8–337, Defendants.**

**Civ. A. No. 74–689.**

United States District Court,
D. New Jersey.

May 20, 1976.

---

**23.** *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 40–43, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

inafter referred to as "local union"), brought an action against the aforesaid defendants seeking to be reinstated in his former position with Citgo and for damages. The suit against the defendant employer alleging wrongful discharge in violation of plaintiff's contractual rights under the collective bargaining agreement, was brought pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Plaintiff's suit against the local union, alleging breach of its duty of fair representation, was improperly brought under § 301 of the LMRA. Correctly stated, this latter suit alleges a breach of the "duty implied from the grant to the union of the exclusive power to represent employees of the collective bargaining unit in § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)." *Holodnak v. Avco Corp. et al.*, 381 F.Supp. 191, 194 n.2 (D.Conn.1974). The Court has jurisdiction under 28 U.S.C. § 1337.

This matter comes before the Court on defendants' motions for summary judgment. To adequately deal with these motions, a full examination of the facts is necessary.

The plaintiff was first employed with Citgo in July of 1960 and continued to be employed by the defendant until May 19, 1973. During much of this time, plaintiff was an oil truck driver which involved, among other things, driving a large truck and pulling large oil hoses. On February 7, 1973 the plaintiff injured his back while unloading hoses from a truck. The next day he was examined by a Dr. Sweeney, the doctor for Citgo's workmen's compensation insurance carrier, and told to rest and return in a week. On February 16, 1973, Dr. Sweeney again examined the plaintiff, who stated he did not think he could go back to work at that time. After cancelling a February 23rd appointment because of an unrelated illness, plaintiff was again examined on March 1, 1973. Dr. Sweeney told the plaintiff that he could return to work on March 5th and apparently gave him a note which stated:

Kaplan, Feingold & Kaplan by Samuel Kaplan, Carteret, N. J., for plaintiff.

Carpenter, Bennett & Morrissey by Thomas L. Morrissey, Newark, N. J., for defendant Cities Service Oil Co.

Talisman & Golat, Newark, N. J. by Alfred J. Petit-Clair, Jr., Perth Amboy, N. J., of counsel and on the brief for defendant Local 8–337.

## OPINION

CLARKSON S. FISHER, District Judge.

■ Plaintiff, Robert Marietta, a former employee of defendant Cities Service Oil Co. (hereinafter referred to as "Citgo"), and a member of defendant Oil, Chemical and Atomic Workers Union, Local 8–337 (here-

"This patient may return to work 3–5–73 regular and see us in one week."

On March 6, 1973 Dr. Sweeney wrote a report to Citgo's carrier stating that in his opinion plaintiff's temporary total disability ended on March 5th, that his back condition was no worse now than prior to his accident, and ". . . after reviewing this man's history [which involved several episodes of non-specific attacks from minor back injuries always in the same area with no x-ray indication of disease] and present and past physical findings, that he should not be placed back in the job capacity of a truck driver and especially one who is required to pull on hoses . . . ."

When the plaintiff returned to his job on March 5th, he was not permitted to work but was told that he would have to be examined by a Citgo doctor. On the same day he was examined by Dr. MacLeod, the medical director for the defendant Citgo. Plaintiff alleges Dr. MacLeod told him that he could return to his regular job, but in his March 9th report to the company, the doctor concluded:

"Because of frequent recurrent back problems related to his work as an oil truck driver which involves manipulating heavy hoses in the process of delivering oil, it is my opinion that this employee should not return to this type of work which carries the hazard of precipitating further recurrences. At the present time he has recovered from his recent recurrence of low back pain and is able to return to work, but it is my recommendation that his work should be restricted to sedentary work and that this should be a permanent restriction."

Plaintiff was not permitted to resume his job as a truck driver and on March 22, 1973 he was informed by Citgo that in view of the medical recommendations and the absence of other work, both now and in the foreseeable future, his employment was to be terminated effective May 19, 1973. On March 25, 1973 the plaintiff filed a grievance with his foreman protesting his termination.

In early April plaintiff visited his personal physician and obtained a memo from him regarding his ability to work. This was a pre-printed memo dated April 10, 1973, addressed "To whom it may concern". The plaintiff's name was handwritten on the memo, and the pre-printed portion read:

"The above-named patient is now able to resume (his)(her) usual occupational duties."

The "(her)" was crossed out and the memo contained the signature of Dr. Schwartz.

On April 9th a meeting with the local union's "Workmen's Committee" and Citgo's Terminal Manager was held to discuss the plaintiff's grievance. The next day the Terminal Manager informed the local union by letter that upon reviewing the facts, the grievance was found to be without merit and, therefore, denied. On the same day the local union submitted the memo of Dr. Schwartz regarding plaintiff's ability to work. The reaction of the Terminal Manager can best be described by quoting paragraph 9 of his affidavit wherein he states:

"In view of the comprehensive reports of Drs. Sweeney and MacLeod, I was not persuaded to change my decision regarding the termination of Marietta on the basis of the one-sentence statement from Dr. Schwartz."

Aff't. of James R. Fiedler. See also, Citgo's answer to plaintiff's Interrogatory 2(d) wherein it is stated that the local union urged the opinion of Dr. Schwartz.

On May 9, 1973 the local union informed the company that it was not satisfied with its April 10th response to the grievance, and it wished to take the grievance to the next step in the grievance procedure. This involved submitting the grievance to the Company Management Representative from Tulsa, Oklahoma. On May 22, 1973 a meeting was held with Citgo's Management Representative, a representative from the International Union, the President of the local union, representatives of the Workmen's Committee, Citgo's Terminal Manager and the plaintiff in attendance. Following these negotiations, Citgo's Manage-

ment Representative denied the grievance by letter dated May 24, 1973.

On June 15th, Citgo's Terminal Manager again met with the local union, and it was agreed at this meeting that the dispute should be submitted to a third person—a medical doctor mutually acceptable to both parties—for resolution. The attorney for the local union advised the Workmen's Committee to submit the names of two physicians, Dr. Winfield and Dr. Gittelman, to the company. Citgo rejected Dr. Winfield, the local union's first suggestion, because he was a general practitioner. Citgo desired an orthopedic surgeon. The company suggested another doctor which was rejected by the local union. The local then proposed Dr. Gittelman and Citgo agreed.

By letter agreement dated July 6, 1973 and executed July 16, 1973 the local union and Citgo agreed that the plaintiff would be examined by Dr. Gittelman, and that his determination regarding the plaintiff's ability to perform satisfactorily the duties of an oil truck driver would be binding on all parties. It was further agreed that prior to this examination, Citgo's Terminal Manager and the local union's Workmen's Committee chairman would meet with Dr. Gittelman and outline the duties of a truck driver. It was to be stressed that the plaintiff must be able to perform these duties without physical difficulty and on a regular full time basis. Finally the agreement provided that if the doctor determined that plaintiff could return to work as a truck driver, he would be reinstated; if not, his lay-off status would remain in effect, and "there shall be no further recourse under the labor agreement involving this matter."

On August 2, 1973 the aforesaid agreement was carried out. Dr. Gittelman was advised of the dispute; that the purpose of the examination was to resolve the dispute; that plaintiff had been examined by Dr. Sweeney and Dr. MacLeod and the other items specified in the agreement including plaintiff's employment history with Citgo. It is not clear whether Dr. Gittelman actually reviewed the findings and opinions of Drs. Sweeney and MacLeod. Citgo's answer to plaintiff's Interrogatory 3(d) indicates that the statements of those doctors and of Dr. Schwartz were made available to Dr. Gittelman, but states that it is not recalled whether he actually received them. (Compare statement by Citgo's counsel at oral argument on this motion to the effect that Dr. Gittelman was not provided with the medical records on file with the company. T. pp. 18, 19).

Subsequently Dr. Gittelman submitted his report, and upon detailing his examination findings and reviewing the plaintiff's medical history, stated:

"Although the examination at this time reveals a completely normal range of motion . . . without comment or complaint . . . it is my opinion that he [plaintiff] should not return to his usual work as a tank driver or any other type of laborious work which might again cause recurrences and periods of varying disability."

Plaintiff's subsequent attempts to have his grievance reopened have failed.

The foregoing facts were derived from the affidavits and answers to interrogatories filed in this action. These documents were analyzed in accordance with Fed.R. Civ.P. 56.[1] Thus these facts represent most of the material facts in this suit and are, with a few exceptions, not in dispute.

I

Plaintiff's action against the defendant Citgo is based upon the premise that the company had no just cause to discharge him, and that it acted contrary to the collective bargaining agreement in attempting to resolve his grievance. It is initially assert-

---

1. Rule 56(c) states that before summary judgment can be granted, there must be no genuine issue of *material* fact and the moving party must be entitled to judgment as a matter of law. In determining whether there are issues of material fact, rule 56(d) is instructive in that, all parties, but particularly the adverse party, may not rest upon the mere allegations of his complaint. He must respond with specific facts showing that a genuine issue exists for trial. If he fails to so respond, summary judgment could be entered against him.

ed that Citgo had no just cause for discharging the plaintiff because the applicable provisions of the collective bargaining agreement were met. Article VII, Provision 2, states in part:

"Persons returning to work after a period of illness must satisfy the Company that they are immediately able to resume their former duties."

Plaintiff argues that the term "immediately" is controlling in the instant case. Since all of the medical reports indicated that plaintiff presently suffered no discomfort or disability from his back injury, and Drs. Sweeney and MacLeod [2] had told him he could return to his regular work, plaintiff contends he was *immediately* able to resume his normal duties and, therefore, he should have been permitted to return to work.

This strained reading of this provision of the agreement is not persuasive. It is clear that the controlling word in the sentence is "able", and, more importantly, it is also clear that both parties to the agreement considered it so. The word "immediate" has significance to the company in determining exactly when a sick leave has ended, and to satisfy itself that the returning employee is fully capable of resuming his *permanent* duties on the day he returns. The provision provides that the company must be satisfied that the returning employee is able. In attempting to satisfy itself, one way or the other, as to plaintiff's capabilities, Citgo was justified. The only question remaining was whether the plaintiff was in fact *able* to resume his former duties, and this was the gravamen of plaintiff's grievance.

■ Plaintiff also asserts that the reason for his discharge rests upon Citgo's desire to punish him for several earlier back injuries which required plaintiff to take sick time. (*e.g.* The last injury was being used as an excuse to fire him.) See, Plaintiff's Complaint ¶ 6 and Aff't. ¶ 9. It is important to note, however, that mere alle-

gations without a concomitant factual showing of lack of good faith does not set forth a claim. See, *Balowski v. International U. United A.A. & A. Imp. Wkrs.*, 372 F.2d 829, 835 (6th Cir. 1967), citing *Hardcastle v. Western Greyhound Lines*, 303 F.2d 182 (9th Cir. 1962), *cert. den.*, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed.2d 229. There is not a single fact submitted which supports plaintiff's allegations, yet there are several facts which suggest that just cause existed for his discharge. Without attempting to resolve the "just cause" issue here, it may at least be said that plaintiff's mere suggestion that his discharge was motivated by a desire to punish him is not sufficient to create a genuine issue of material fact. See, *Patmon v. Van Dorn Co.*, 498 F.2d 544, 547 (6th Cir. 1974).

■ Plaintiff finally asserts that Citgo violated his rights under the collective bargaining agreement by agreeing to submit the grievance to one man,—Dr. Gittleman. Plaintiff contends this was not arbitration under the terms of the agreement. This is essentially the same argument made against the defendant local union, and the Court will examine it later in the opinion. Suffice it to say at this time, that the Court does not find the defendant company breached its agreement in this regard.

For its part, Citgo contends that it is entitled to summary judgment as a matter of law even granting plaintiff all reasonable inferences from the facts. The company argues that since the grievance in question went to arbitration, the plaintiff employee may not challenge the decision of the arbitrator in federal court and relies on *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Defendant, in effect, suggests that no matter what may be the case as to the union, the matter is settled as to Citgo—the arbitrator having found plaintiff unable to perform his former duties, his discharge was not without cause. This is a strong argument consider-

---

**2.** There is some dispute over whether Dr. MacLeod actually told the plaintiff that he could return to his regular duties, but the Court will

view this matter most favorable to the plaintiff in order to determine whether this is a genuine issue of *material* fact.

ing that the courts generally refuse to review the merits of arbitration and its great value in expeditiously and finally resolving labor disputes in an informed manner.

On the other hand, the Supreme Court in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) seemed to indicate that the union's failure to fulfill its duty of fair representation in the grievance procedures could result in the employer being found to have wrongfully discharged the employee. The question thus becomes whether, following a determination by an arbitrator, an action can still be maintained against the employer as well as against the union, where it is alleged that the union breached its statutory duty of fair representation.

In *Margetta v. Pam Pam Corp.,* 354 F.Supp. 158 (N.D.Cal.1973), the district court answered the question in the negative and dismissed plaintiff's suit against the employer. In reversing in *Margetta v. Pam Pam Corp.,* 501 F.2d 179 (9th Cir. 1974), the circuit court considered *Vaca, supra,* and concluded: .

"To us, it makes little difference whether the union subverts the arbitration process by refusing to proceed as in *Vaca* or follows the arbitration trial to the end, but in so doing subverts the arbitration process by failing to fairly represent the employee. In neither case, does the employee receive fair representation. * * *"

*Id.,* at 180

"The fundamental teaching of *Vaca* is that somewhere along the judicial trail, the employee is entitled to a fair hearing on her grievance and, if wrongfully discharged, a judgment for adequate compensation or other relief. To suggest that she may sue her union is no answer. Relief against the union would not restore her job with Pam Pam. As indicated in *Vaca,* in these circumstances, adequate relief may be obtained only by joining the union and the employer."

*Id.,* at 181. *Accord, Holodnak v. Avco Corp.,* 381 F.Supp. 191 (D.Conn.1974); *aff'd* 514 F.2d 285 (2d Cir. 1975). This view would appear to be consistent with the approach taken by the Third Circuit where, in

another context, it noted the *Steelworkers* trilogy of cases but went on to say:

". . . the question of judicial review of a 'final' private decision should turn on the adequacy of that private decision under the contract in terms of the controversy presented. If the court is convinced both that the contract procedure was intended to cover the dispute and, in addition, that the intended procedure was adequate to provide a fair and informed decision, *then review of the merits* of any decision *should be limited to* cases of fraud, deceit or *instances of unions in breach of their duty of fair representation."* (Emphasis added).

*Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32, 38 (3d Cir. 1968). Most significantly the issue was resolved against the defendant employer in the very recent decision of *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

This Court concludes that Citgo is not entitled to summary judgment as a matter of law where the question of the union's breach of duty remains open. Whether and, if so, to what extent this question does remain open is the next point for the court to consider.

II

Plaintiff's action against the local union is based upon its alleged failure to adequately and fairly represent him in the grievance procedures as set forth in the collective bargaining agreement.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." [Citations omitted].

*Vaca, supra* 386 U.S. at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857. Plaintiff argues that in several particulars, the defendant, local union, acted in an arbitrary and bad faith manner in representing his interests. These particular actions must be evaluated to determine whether triable issues remain.

Plaintiff's first contention is that the local union and Citgo were engaged in a

conspiracy to discharge him, and that all negotiations were spurious and carried on in bad faith in that the union took several steps within the grievance procedure without consulting, advising or obtaining the consent of the plaintiff. He further asserts that he did not agree to medical arbitration and did not know the purpose of Dr. Gittelman's examination.[3]

■ After filing his grievance, plaintiff admits that he left the matter in the hands of the local union. Plaintiff's Aff't. ¶ 6. Thus, while plaintiff could have presented his grievance directly to the company without the intervention of a bargaining representative, as provided in Article VIII of the collective bargaining agreement, he did not. The local union, as the exclusive collective bargaining representative for the plaintiff, 29 U.S.C. § 159(a), and acting under a statutory duty to represent his interests fairly in dealing with the employer, 29 U.S.C. § 158(b), proceeded through the grievance procedures on plaintiff's behalf. This Court is of the view that plaintiff's consent to the union's actions in fulfilling its duty as exclusive bargaining agent is not necessary. This was first suggested by *Vaca v. Sipes, supra,* where the Supreme Court held that a union's mere refusal to press a grievance to the final stages of the grievance procedure does not constitute a breach of its duty of fair representation.

> "When the union thus abandons a grievance in a permissible exercise of its discretion, the employee's consent is not required and is not determinative of the issue whether the union breached its duty to the employee."

*Sanderson v. Ford Motor Co.,* 483 F.2d 102, 114 (5th Cir. 1973). More significantly, the district court in *Sanderson* instructed the jury so as to make a finding of arbitrary and bad faith action turn on whether the plaintiff consented to a settlement of his grievance. In reversing, the circuit court stated:

> ". . . the question of Sanderson's consent did not belong in the case as a determinative issue . . ."

*Id.*

■ Similarly, the union did not act unfairly in not consulting with or advising the plaintiff of its bargaining activities. In *Malone v. United States Postal Service,* 526 F.2d 1099, 1109 (6th Cir. 1975), the court stated:

> "We do not think that requiring a Postal Service employee who elects to pursue a grievance procedure created in a collective bargaining agreement to allow the Union to process his grievance, *exclusive of his active participation,* unfairly prejudices the employee who also has the option of pursuing an agency and Civil Service appeal. If he chooses to pursue the grievance procedure, the Union is subject to the duty of fair representation in handling his grievance." (Emphasis added).

Thus, this Court concludes that even when viewed in a light most favorable to the plaintiff, the facts relating to plaintiff's consent and knowledge of union bargaining activities are not material to the issue of fair representation.

■ Plaintiff next asserts that the decision of the local union and Citgo[4] to submit the dispute to a medical arbitrator constituted a violation of his rights under the collective bargaining agreement, that the selection and appointment of the medical arbitrator was without authority and, thus, his grievance was never properly arbitrated. By not properly adhering to the collective bargaining agreement, plaintiff contends, the union breached its duty of fair representation. Even assuming that the arbitrator's decision is a nullity, if the union

---

3. There is a great deal of dispute over whether the plaintiff was made aware of all of the union's activities on his behalf. *Compare* Plaintiff's Aff't. ¶ 7 and Answers to union's Interrogatories *with* Citgo's answer to Plaintiff's Interrogatory # 9; Union's answer to Plaintiff's Interrogatory # 8(a) and Affidavit of Union President, ¶ 14. Here again, the Court will view this conflict in a manner most favorable to the plaintiff to determine whether it presents a genuine issue of material fact.

4. See discussion *supra* Part I regarding claim that Citgo breached the collective bargaining contract.

decided not to process plaintiff's grievance to the final stages of the grievance procedure, that alone would not constitute bad faith. *Vaca v. Sipes, supra.* More importantly, however, the actions of the local union and Citgo were not such as would constitute a substantial breach of contract or unfair representation.

It is clear from the facts that a middle step in the grievance procedures outlined in the collective bargaining agreement was omitted by the parties. After a grievance is ruled upon by the company's Management Representative and no satisfactory agreement is reached, a committee of two is to be chosen—one by the union, one by the company—who are to attempt to settle the dispute. If they cannot resolve the dispute, they can submit the matter to a third person chosen by them. Plaintiff argues that the collective bargaining agreement makes no provision for medical arbitration, and that Dr. Gittelman was not aware of or familiar with the provisions in the agreement which he is obligated to interpret and apply. Plaintiff reiterates his argument regarding the term "immediate" in provision 2 of Article VII and submits that the arbitrator ruled improperly.

In view of all of the above, however, it must be noted that:

> ". . . a wide range of reasonableness [and discretion] must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith . . . ."

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, 1058 (1953). With the only issue in dispute, whether plaintiff was "able" to resume his former duties (an issue which did not involve a complex contract interpretation but a medical determination), it was not unreasonable for the parties to conclude that the most efficient and effective way to resolve the grievance was to submit the issue to a mutually agreeable doctor. Considering the nature of the dispute, the middle grievance step which was omitted would hardly seem appropriate.

"It must be recognized that collective bargaining agreements cannot and do not precisely anticipate all problems which arise in the employment context to which they apply.

Many provisions do little but establish the framework for further bargaining. Others have a generality which obviously looks to joint labor-management particularization. . . . [U]nforeseen contingencies require continual rule making which, passing in the guise of interpretation, parallels the law making of courts . . . [citation omitted]."

*Sanderson, supra* at 112.

In *Sanderson* the court noted a departure from the strict wording of the written collective bargaining but found the interpretation agreed upon by labor and management to be a permissible one. Likewise in *Whitmore v. Eastern Greyhound Lines*, 383 F.Supp. 46 (E.D.Mich.1973) the court viewed the same type of decision as was made in the instant case (i. e. skipping two man arbitration in favor of one) to be within the union's duty of fair representation.

It is also significant to note that the defendants did not just off-handedly and arbitrarily decide to submit to medical arbitration. The facts are clear that a written and fully executed submission agreement was entered into detailing the rights and obligations of the parties in submitting the dispute to a mutually agreeable physician, including precisely what the arbitrator was to decide. See, *Panza v. Armco Steel Corp.*, 208 F.Supp. 50, 53, 54 (W.D.Pa.1962), *aff'd* 316 F.2d 69 (3d Cir. 1963) where a somewhat similar agreement was held proper.

■ This Court concludes that neither the local union nor Citgo acted improperly in by-passing the two man arbitration provision in favor of medical arbitration. Under the circumstances of this case and considering the manner in which the submission agreement was concluded, Citgo did not breach the collective bargaining agreement and the local union did not act arbitrarily or in bad faith.

Plaintiff's next assertion is that the defendant, local union, acted arbitrarily and

in bad faith in selecting Dr. Gittelman as the medical arbitrator. Plaintiff contends that Dr. Gittelman's selection was not in his best interest:

". . . since [he] draws a large part of his compensation as a doctor employed by various companies to examine employees under similar circumstances as plaintiff's with the purpose of seeking evidence to support the company's position."

Plaintiff's answer to Union's Interrogatory # 5.

It is important to note, however, that Dr. Gittelman has not worked for Citgo since July of 1968. Citgo's Answer to Plaintiff's Interrogatory # 3(e). Moreover, the union argues, even if plaintiff's contention was relevant, Dr. Gittelman performs medical examinations of company employees who are seeking workmen's compensation, and if any bias existed in the doctor at all it would be toward finding less disability rather than more.

■ Whatever merit these arguments may have, this Court will not presume that Dr. Gittelman was biased in any way. Dr. Gittelman is an orthopedic surgeon, adequately qualified to serve as a medical arbitrator. The contention that, because he is employed by various companies to perform medical examinations of their employees in matters allegedly calling for medical reports favorable to the companies, the selection of Dr. Gittelman as arbitrator was in bad faith, is insufficient as a matter of law. See generally, *Local 13, Internat'l Long. & Ware. Union v. Pacific Maritime Ass'n*, 278 F.Supp. 755, 768 (C.D.Cal.1967), *rev'd.* on other grounds 441 F.2d 1061 (9th Cir. 1971) *cert. den.* 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664.

■ Plaintiff next asserts that the local union breached its duty of fair representa-

tion of plaintiff's interests in that it made an inadequate effort to reopen or seek clarification of the arbitrator's decision. In view of the fact that the union had agreed with the company that Dr. Gittelman's decision would be binding ". . . and there shall be no further recourse under the labor agreement involving this matter", and in view of the decision in *Vaca v. Sipes, supra*, that a union's decision that a particular grievance lacks sufficient merit to further pursue it is not a breach of its duty of fair representation, this Court sees no breach of duty on the part of the union in failing to request a reopening of plaintiff's grievance. Plaintiff has set forth no facts which would support his contention that the union's decision not to seek reopening was made in bad faith.[5]

■ Plaintiff also alleges that the union failed to pursue his grievance because the union was hostile to him. This alleged hostility arose, says the plaintiff, because he pursued his grievance vigorously and protested to the union many times that he did not feel it was doing all it could for him. Plaintiff's Aff't. ¶ 9 and answer to Union's Interrogatory # 10. Plaintiff alleges no other facts to support his claim that the union was hostile to him. As was noted earlier, bare allegations of bad faith are not sufficient to create a genuine issue of fact for trial.[6] See, *Patmon v. Van Dorn Co., supra.*

■ In addition plaintiff argues that the union breached its duty of fair representation by making no effort to find other work for or to rehabilitate the plaintiff. Such actions are not within the union's statutory duty of fair representation.

■ Finally, plaintiff contends that the union breached its duty of fair representa-

---

**5.** The fact that the union wrote and so requested the company after the plaintiff obtained legal counsel does not indicate the union's bad faith. *Vaca v. Sipes, supra.*

**6.** The Court is aware that where motive and interest are relevant to a claim summary judgment should be granted with great caution. *Local 13, Int. Longshoremen's & W. U. v. Pacific Mar. Ass'n*, 441 F.2d 1061, 1068 (9th Cir.

1971). Plaintiff, however, has set forth no facts from which the Court could draw any inference of hostility. This issue, baldly stated and unsupported, cannot remain in this case. Compare, *Hoffman v. Jannarone*, 532 F.2d 746 (3d Cir. 1976). A subsequent factual showing supporting plaintiff's contention might be considered by the Court.

tion, acting arbitrarily and in bad faith in making ". . . no real effort to pursue with the company the favorable report of my doctor, Dr. Schwartz." Plaintiff's Aff't. ¶ 10. In addition plaintiff asserts that the union did nothing to prepare plaintiff's grievance for adequate presentation, either by attempting to obtain favorable medical evidence through other doctors, pursuing the recommendation of Dr. Schwartz by attempting to have him present more detailed reasons for his conclusions, or by making inquiry into Dr. Sweeney's and Dr. MacLeod's initial instructions for plaintiff to return to regular work.

> "While negligence in handling grievances has not been identified as breaching the union's duty of fair representation, *Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970), the courts have adopted the position that a union may not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner. *Vaca v. Sipes, supra*; [other citations omitted]. Without any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or *inaction* that is so unreasonable and arbitrary as to constitute a violation of the duty of fair representation. A union may refuse to process a grievance or handle the grievance in a particular manner for a multitude of reasons, but it may not do so without reason, merely at the whim of someone exercising union authority. A union must especially avoid capricious and arbitrary behavior in the handling of a grievance based on a discharge . ."
> (Emphasis added).

*Griffin v. International U., United A.A. & A.I.W.*, 469 F.2d 181, 183 (4th Cir. 1972). Accordingly, this Court concludes that there is a genuine issue for trial regarding the union's failure to attempt to gather evidence in support of plaintiff's grievance. Such evidence, either from other doctors, Dr. Schwartz, or impugning the reports of Drs. Sweeney and MacLeod, could have resulted in resolving the grievance in the plaintiff's favor at an early stage of the grievance procedure. In addition, to the extent other medical reports were considered by the arbitrator, such evidence might also have been considered. This Court cannot now say that such inaction on the part of the defendant union did not constitute a breach of its statutory duty of fair representation.

### III

On the basis of the foregoing, the defendants' motions for summary judgment must be denied as there are genuine issues of material fact for trial. Under Fed.R. Civ.P. 56(d), however:

> ". . . if a court finds that summary judgment cannot be granted because there are genuine issues of material fact to be tried, it is empowered, when it would be practicable to save time and expense and to simplify the trial, to issue an order that specifies the facts that appear without substantial controversy."

Wright & Miller, *Fed.Prac. and Proc.*: Civil § 2737 p. 675. In view of the fact that plaintiff has but a single claim against each defendant, partial summary judgment is not appropriate, nor is it authorized by Rule 56(d). *Id.* at pp. 680, 681. The latter rule does permit the court to withdraw some of the factual issues from the case when they are not material to the claim and an order issued pursuant to said rule results in narrowing the scope of the trial. This is what this Court has done by way of this opinion and an appropriate order, as provided in Rule 56(d), shall be submitted.

As was noted in part I of this opinion, plaintiff's claim against the defendant Citgo would not be dismissed, nor would summary judgment for that defendant be entered if the plaintiff's claim against the defendant union remained viable. Since the latter claim does remain viable, summary judgment is denied. In view of all of the above, however, the only issue for trial is, broadly stated, whether the defendant, local union, breached its statutory duty of fair representation of plaintiff's interests, in failing to attempt to gather evidence favorable to the plaintiff's position in the griev-

ance procedure. See discussion part II *supra*. On the basis of the affidavits, interrogatories and statements of counsel in arguing the motion, the Court concludes that the other factual issues are either not in dispute or not material.

Submit an order in accordance with this opinion.