**Angel CRUZ, Plaintiff,**

v.

**TRIANGLE AFFILIATES, INC., Tempco Service Industries, Inc., and Local 32B–32J Service Employees International Union AFL–CIO, Defendants.**

**No. 81 CV 3088 (ERN).**

United States District Court,
E.D. New York.

Oct. 4, 1983.

---

Mudge, Rose, Guthrie & Alexander by Stephen M. Packard, Catherine E. Palmer, New York City, for plaintiff.

Miller & Seeger by Irving A. Logue, New York City, for defendant Triangle.

Richard M. Gaba, Garden City, N.Y., for defendant Tempco.

Israelson, Manning & Raab by Ira A. Sturm, New York City, for defendant Local 32B–32J.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Defendants have moved for summary judgment pursuant to F.R.Civ.P. 56 and to dismiss the complaint pursuant to F.R. Civ.P. 12(b). For the reasons which follow, defendants' motions are granted.

Plaintiff commenced this suit on September 21, 1981. Subsequently, on May 3, 1982, court-appointed counsel filed an amended complaint in eight counts, which invoked this Court's jurisdiction under 28 U.S.C. § 1343(4) and 29 U.S.C. § 185(c) to seek redress against plaintiffs' former employers and the union which represented him. Plaintiff alleges that Triangle Affiliates, Inc. (Triangle) (Counts IV, V, and VI) and Tempco Service Industries, Inc. (Tempco) (Counts I, II, and III), his former employ-

ers, each acted in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by discriminating against him in work assignments and on-the-job treatment because he is of Puerto Rican origin. He also claims that he was eventually discharged by Triangle for the same reason. The treatment by Tempco allegedly arose from plaintiff's refusal to participate in a scheme to employ illegal aliens. In addition to Title VII claims, plaintiff alleges that his former employers' conduct was a prima facie tort.

Plaintiff has also sued Local 32B–32J, Service Employees International Union, AFL–CIO (Union) (Counts VII and VIII), under section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, for its alleged failure to have processed his grievances and its breach of its duty to provide fair representation.

The parties are not in dispute upon the following facts. In January 1974 Tempco, which held the maintenance and cleaning services contract at the World Trade Center, hired plaintiff as a porter. Tempco subsequently lost the contract to Triangle in February 1978. At that time, Triangle hired plaintiff as a porter and subsequently discharged him on October 31, 1978.

### I.

During the pendency of defendants' motions, the Supreme Court determined that the six-month statute of limitations of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), should govern actions brought by an employee against his union for a breach of the duty of fair representation. *Del Costello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Based upon plaintiff's averment that he registered a complaint with the union "immediately" after his termination from Triangle and that approximately one month later, a union business agent informed him that the union could do nothing for him, the union argues that the suit was not filed within six months of the last possible date upon which the claim against it could have accrued. *See Vaca v. Sipes,* 386 U.S. 171,

191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). Plaintiff responds that *Del Costello* should not be applied retroactively to bar his claim.

The factors to be considered in determining whether to apply a decision of the Supreme Court prospectively only are stated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted):

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

All three factors in *Chevron* must be shown to favor prospective-only application before a decision will be denied retroactive effect. *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1294 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

Plaintiff first argues that he relied upon prevailing Second Circuit law that the statute of limitations was three years. *Assad v. Mount Sinai Hospital,* 703 F.2d 36, 43–44 (2d Cir.1983). The Court is unable to locate any prevailing Second Circuit law upon this issue as of the time, September 21, 1981, when plaintiff filed his complaint. *See Kikos v. International Brotherhood of Teamsters,* 526 F.Supp. 110, 115 (E.D.Mich.1981). The question appears to have been first addressed in *Flowers v. Local 2602, etc.,* 671

F.2d 87 (2d Cir.1982) (on remand for reconsideration in light of *United Postal Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981)), which was reversed upon that question as a companion case to *Del Costello.* Moreover, the Supreme Court foreshadowed its decision in *Del Costello* with dicta in *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 63, 101 S.Ct. 1559, 1564 (1981):

> We think that the unfair representation claim made by an employee against his union, even though his employer may ultimately be called upon to respond in damages for it if he is successful, is more a creature of "labor law" as it has developed since the enactment of § 301 than it is of general contract law.

In a concurring and dissenting opinion, Justice Stevens noted the potential application of the Court's dicta. 451 U.S. at 72, 101 S.Ct. at 1569.

■ Plaintiff additionally argues that the court should not reward the union with the benefit of a newly established statute of limitations for its repeated refusals to investigate his complaints.[1] Assuming, *arguendo,* that each alleged instance of the union's breach of its duty to pursue plaintiff's grievances gave rise to a separate claim, plaintiff, by his own admission, waited almost three years from the last possible date of a breach to institute this suit. Despite the asserted merits of a claim, statutes of limitations function as statutes of repose which favor the swift and orderly resolution of claims. The potential merits of plaintiff's case do not separate him from any other plaintiff who, knowingly or unknowingly, waits too long to seek relief from the courts. The plaintiff has advanced no persuasive reason to avoid the effect of *Del Costello.* The Court finds that the plaintiff's claim is time barred and accordingly grants defendant Local 32B–32J's motion for summary judgment upon Counts VII and VIII of the amended complaint.

1. In his omnibus affidavit in opposition to defendants' motions, plaintiff is not specific about

## II.

In support of its motion to dismiss the complaint, Tempco also presents statute of limitations arguments.

For purposes of this motion, the Court accepts as true the facts as stated in plaintiff's affidavit. Tempco discharged plaintiff on February 3, 1978, the last day of its cleaning services contract. Plaintiff subsequently registered an oral complaint with the Equal Employment Opportunity Commission (EEOC) on December 15, 1978. The EEOC referred the matter to the New York City Commission on Human Rights, which did not act upon the claim, but instead, referred it back to the EEOC. On March 9, 1981, the EEOC found no reasonable cause for the complaint and issued a right to sue letter. The letter did not name Tempco as a party; however, plaintiff avers that he had intended to charge Tempco and thought that he had done so.

Tempco argues that plaintiff failed to meet the filing requirements of Section 706(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e) (in pertinent part):

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred .....

The Supreme Court has held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling."

the dates on which he complained to the union.

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (footnote omitted).

█ Plaintiff contends that the limitation of section 706(e) should be equitably tolled because of the merits of his claim and his status of layman with English as a second language. Plaintiff does not dispute that Tempco did nothing to lull or mislead him or otherwise forestall or impede him from timely filing with the EEOC. *See Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 n. 12 (2d Cir.1978); *compare Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 594–96 (5th Cir.1981) (allegation that employer misrepresented its intent to reinstate employee to a third party, whom it should have known would convey the misrepresentation, precludes summary judgment); *Ganguly v. New York State Department of Mental Hygiene, etc.,* 511 F.Supp. 420, 428 (S.D.N.Y.1981) ("Even if tolling is permissible, there are present none of the traditional justifications for equitable relief from statutes of limitation. Plaintiff knew all the necessary facts well within the limitations period, and plaintiff was not lulled into inaction by defendants' concealment or misrepresentation."); *Franci v. Avco Corp., etc.,* 538 F.Supp. 250, 254 (D.Conn.1982) (employer dangled the hope of recall before the employee). Plaintiff also does not answer defendant's argument that it would be hampered by having to defend an action more than three years after the alleged events when memories may have faded and, in this case, the witnesses may not be available. Additionally, there is no claim that a governmental agency acted delinquently in handling the matter so as to have deprived plaintiff of access to judicial review. *Compare De Matteis v. Eastman Kodak Co.,* 520 F.2d 409, 411 (2d Cir.1975) (on rehearing) (plaintiff entitled to prove that he was misled by the EEOC); *Williams v. CLE Corp.,* 556 F.2d 346, 350–51 (5th Cir.1977) (EEOC sent a "patently misleading" letter to the plaintiff). In essence, plaintiff urges an equitable tolling based solely upon ignorance of the law, a circumstance or condition which does not toll the limitation. *See Franklin v. Herbert Leh-*

*man College,* 508 F.Supp. 945, 952 (S.D.N.Y. 1981) ("In the instant action, tolling would be inequitable to the defendants who should not be forced to bear the burden of plaintiff's misguided journey through the administrative maze."); *Pfister v. Allied Corp.,* 539 F.Supp. 224, 227 (S.D.N.Y.1982) ("Indeed, one can only conclude that the plaintiff's delay in filing his claim was the result of *ignorance,* inadvertence, or a last minute change of heart. These are insufficient causes of equitable tolling . . . ." (emphasis supplied)) (suit under the Age Discrimination in Employment Act). Accordingly, upon defendant Tempco's motion, Counts I and II of the amended complaint are dismissed.

█ The Court also dismisses Count III of the amended complaint. This count merely realleges Tempco's conduct, as set out in Counts I and II, and labels it "maliciously" and "intentionally" inflicted and done so "without excuse or justification." The conclusion is a prima facie tort under the law of New York. As such, the count merely functions as a catch-all which attempts to convert time-barred statutorily based federal claims into a State law cause of action.

It would make little sense to hold that plaintiff may not prevail on a cause of action, having failed to establish certain elements, which are essential thereto, and then in the exercise of flexibility, apply a different name to it, and without correcting any of the fatal defects, permit the cause of action (absent a unique quality) to stand.

*Belsky v. Lowenthal,* 62 A.D.2d 319, 322, 405 N.Y.S.2d 62 (1st Dept.1978), *aff'd,* 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1979) (memorandum). This principle has generally been applied to dispose of complaints which attempt to salvage or preserve deficiently pleaded causes of action by pleading that the same allegations constitute a prima facie tort. *Church of Scientology of California v. Siegelman,* 94 F.R.D. 735, 737–39 (S.D.N.Y.1982) (cases cited and discussed therein); *Martin-Trigona v.*

*Brooks & Holtzman,* 551 F.Supp. 1378, 1383 (S.D.N.Y.1982). The logic of these decisions is compelling where, as here, the deficient cause of action sought to be preserved is time barred.

### III.

In support of its motion for summary judgment, Triangle has submitted affidavits upon the merits of plaintiff's allegations. It contends that there are no genuine issues as to any of the material facts because plaintiff's assault upon his supervisor precipitated his discharge. According to the affidavit of the supervisor, on October 31, 1978, at the end of the shift, plaintiff went to the employee locker room without first returning keys to the supervisor, a part of the daily routine. The supervisor called to plaintiff, "Cruz, return your keys before you change." Plaintiff returned the keys after changing, at which time the supervisor told him, in an ordinary tone, in the future, to return the keys before going to the locker room. Plaintiff began to complain; the supervisor responded, "Cruz, am I running a school here? I told you once before, don't act like a school boy." Plaintiff became very agitated and picked up a heavy metal box, 30–40 lbs. in weight, from the supervisor's desk. Cursing and shouting, he threatened the supervisor, who told him to return the box to the desk. Plaintiff said, "What if I don't", in between profanities, to which the supervisor replied, "If you don't, you're going to be fired—it's as simple as that." Plaintiff then threw the box at the supervisor, who summarily fired him.

Plaintiff's affidavit contains a slightly different version of the events:

44. On October 31, 1978, an incident took place during which my supervisor, Don Kim (phonetic spelling), berated, embarrassed, and humiliated me in front of my fellow employees for simply forgetting to return a set of keys before changing my clothes to go home from work.

45. Because Mr. Kim's (phonetic spelling) reaction to my forgetfulness was so extreme and different from the way he treated other employees, and because of Triangle's previous acts of discrimination

against me, I accused him and Triangle of violating my civil rights and pleaded and demanded for their protection. Mr. Kim (phonetic spelling) replied that I was "acting like a spoiled child" for seeking to protect my equal employment rights.

46. Mr. Kim (phonetic spelling) continued to taunt me and provoke me concerning this matter until I became angry and began to argue with him. At this point, Mr. Kim (phonetic spelling) told me I was fired.

Plaintiff further avers that he believes the entire incident was "artificially created and exaggerated" as a pretext for Triangle's real motive, the continuing intentional and purposeful discrimination which has pervaded his entire experience with this former employer. The exact nature of the discriminatory treatment is revealed in plaintiff's affidavit as follows:

35. During the course of my employment with Triangle, my supervisors, particularly Mr. Don Kim (phonetic spelling), and my fellow employees directed verbal taunts and provocations, harassments, threats and ethnic slurs at me because of my Puerto Rican national origin.

36. In addition to verbally abusing me because of my Puerto Rican national origin, my supervisors at Triangle repeatedly singled me out to perform the most menial and degrading tasks and frequently assigned me to perform tasks that were extremely vigorous (*sic*) and demanding for a man of my age and health.

37. It is my belief that these employment practices were discriminatory because they were purposefully and intentionally engaged in and directed against me by Triangle and its agents and employees because of my Puerto Rican national origin and because I knew about the continuing scheme to employ illegal aliens at the World Trade Center.

The Court notes that this is the first mention of any involvement of Triangle in the scheme alleged to have been conducted by Tempco. Additionally, the amended com-

plaint is even less specific as to events, times, locations, and actors.

The language employed in plaintiff's affidavit is especially significant when considered in light of other unrefuted facts. A letter dated December 18, 1978, from a staff psychiatrist, Dr. Hong Cho, of the Adult Psychiatric Clinic of Queens Hospital concerning plaintiff's application for unemployment insurance contains the following:

> Mr. Cruz has been known to the Adult Psychiatric Clinic of this hospital since November 4, 1976. He suffers from a nervous disorder characterized by distrust of others, irritability, impulsive behavior, and defective judgment. In reference to Mr. Cruz's threat to his supervisor, it is my opinion that this was an impulsive act on his part, consistent with the nature of his psychiatric illness, and that there was no forethought given to the consequences.

Plaintiff does not deny the existence of his condition, and, in his charge of discrimination filed with the EEOC, he admitted that he had a "flare-up, which resulted in my discharge."

The charge to the EEOC contained only two specific acts of discrimination. Plaintiff accused defendant of systematically replacing employees of Puerto Rican origin with employees of South American origin. Defendant has submitted direct and circumstantial evidence consisting of an affidavit and supporting exhibits and company records, which render this claim speculative. Defendant's employment application forms do not request the prospective employee's place of national origin. A list of employees with hispanic surnames is maintained for purposes of reporting the racial composition of the staff to the EEOC, but there is no record nor notation concerning country of origin. For the week ending March 26, 1978, defendant's report to the EEOC showed 215 hispanics among a total of 626 service workers. Approximately a year later, on March 4, 1979, defendant reported 205 hispanics among 599 service workers. These documents and the accompanying affidavit of Triangle's personnel manager are unrefuted.[2]

Plaintiff also charged defendant with failure to provide proper equipment, in particular a uniform. In his affidavit, the supervisor responds that uniforms, along with one assigned to plaintiff, were not returned from the cleaners. In its place he offered overalls which plaintiff refused. He adds that plaintiff acknowledged the event at a hearing held on March 29, 1979, before the New York City Commission on Human Rights. There is no denial or refutation of these averments.

There is also no denial or refutation of incidents when the supervisor, aware of plaintiff's nervous condition, was solicitous or tolerant of plaintiff's behavior even though it did not comply with the rules of the workplace. Finally, and again uncontradicted, the supervisor notes that the plaintiff's job, porter, required the cleaning of restroom facilities and that several other porters were eager to assume plaintiff's · position.

▮ In sum, the documents and affidavits submitted by the parties pit plaintiff's nonspecific generalizations and beliefs against defendant's unrefuted facts. Moreover, some inconsistency appears between which conduct is attributable to which former employer; and further, from the context of the allegations, whether plaintiff's fellow employees subjected him to taunting, ethnic slurs, and other improprieties over which Triangle would have had no control.[3]

---

**2.** The affidavit of the personnel manager contains opinions about the reasons for plaintiff's lawsuit. These opinions are cast in the terms of "admissions" by plaintiff; however, the Court has not considered them in determining this motion because they are of dubious relevance.

**3.** In paragraph 4(D) of his affidavit, the supervisor relates an encounter with plaintiff, whose work had not been satisfactory. The supervisor took plaintiff aside and inquired about any problem or difficulties. Plaintiff stated that he was being sabotaged by a fellow employee whom he refused to identify. The employee was spreading rumors that he had raped plain-

Despite the quantity and quality of defendant's evidence, plaintiff argues that there is, by virtue of his affidavit, an issue of fact about the motive or reason for his discharge.

The Court of Appeals has recognized that properly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation. Thus, the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party. The litigant opposing summary judgment, therefore, "may not rest upon mere conclusory allegations or denials" as a vehicle for obtaining a trial. Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (citations omitted; emphasis in original). From the papers submitted, the Court concludes that plaintiff has not met this burden. *See Patmon v. Van Dorn Co.*, 498 F.2d 544 (6th Cir.1974) (*per curiam*) (in a Title VII case, uncontradicted evidence showed that plaintiff was not qualified for a promotion; plaintiff submitted an affidavit that in his opinion he was qualified); *McClain v. Mack Trucks, Inc.*, 532 F.Supp. 486, 489–90 (E.D. Pa.1982), *aff'd*, 707 F.2d 1393 (3d Cir.1983) (plaintiff's opinion about why he was terminated was not sufficient to overcome the undisputed evidence of absenteeism and his failure to properly document sick days); *Marietta v. Cities Service Oil Co.*, 414 F.Supp. 1029, 1034 (D.N.J.1976) ("... plaintiff's mere suggestion that his discharge was motivated by a desire to punish him is not sufficient to create a genuine issue of material fact."). Therefore, defendant Triangle's motion for summary judgment upon Counts IV and V is granted. Count VI, which, like Count III concerning defendant Tempco, merely realleges and labels the alleged conduct a prima facie tort, must, likewise, fail.

Accordingly, the Clerk is directed to enter summary judgment in favor of defendants dismissing the complaint.

SO ORDERED.

tiff's daughter. Plaintiff's papers do not address this incident.